UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of the Republic of Kazakhstan for an Order Directing Discovery from Jefferies & Co. Pursuant to 28 U.S.C. § 1782 | Case No. 18-MC-541-GHW |

**ANATOLIE STATI, GABRIEL STATI, ASCOM GROUP, S.A., AND
TERRA RAF TRANS TRAIDING LTD.'S MEMORANDUM OF LAW IN
SUPPORT OF MOTION TO INTERVENE AND IN OPPOSITION
TO THE REPUBLIC OF KAZAKHSTAN'S § 1782 APPLICATION**

Dated: New York, New York
January 18, 2019

KING & SPALDING LLP
James E. Berger
Charlene C. Sun
William B. Panlilio
Enrique J. Molina
1185 Avenue of the Americas
New York, New York 10036
(212) 556-2200
(212) 556-2222 (fax)
jberger@kslaw.com

*Attorneys for Anatolie Stati, Gabriel
Stati, Ascom Group, S.A., and Terra
Raf Trans Traiding Ltd.*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ iii

PRELIMINARY STATEMENT ........................................................................................ 1

FACTUAL BACKGROUND ............................................................................................ 3

I.      THE ROK'S CAMPAIGN OF INTIMIDATION AND HARASSMENT AGAINST
        THE STATI PARTIES ........................................................................................... 3

II.     THE SCC ARBITRATION ................................................................................... 4

III.    POST-AWARD PROCEEDINGS ......................................................................... 5

        A.      THE SWEDISH SET-ASIDE PROCEEDINGS ................................................. 5
        B.      THE U.S. ENFORCEMENT PROCEEDINGS ................................................. 6
        C.      THE ENGLISH ENFORCEMENT PROCEEDINGS ........................................ 8

ARGUMENT ................................................................................................................ 10

I.      THE COURT SHOULD PERMIT THE STATI PARTIES TO INTERVENE ....... 10

        A.      THE STATI PARTIES MAY INTERVENE AS OF RIGHT ............................... 10
        B.      IN THE ALTERNATIVE, THE STATI PARTIES SHOULD BE GRANTED PERMISSIVE
                INTERVENTION ........................................................................................ 12

II.     LEGAL STANDARD FOR § 1782 DISCOVERY ....................................... 13

III.    THE COURT SHOULD DENY THE ROK'S APPLICATION ............................... 14

        A.      THE § 1782 APPLICATION DOES NOT SATISFY THE DISCRETIONARY FACTORS SET
                FORTH IN *INTEL* ........................................................................................ 14

                1.      The Documents or Testimony Sought are Accessible Absent the
                        Assistance of § 1782 ................................................................. 14

                2.      The Application Conceals an Attempt to Circumvent Foreign Proof-
                        Gathering Restrictions and Policies of the United States ........................ 15

                3.      The Discovery Sought is Not Proper Under Fed. R. Civ. P. 26 ................. 16

        B.      DISCOVERY WILL NOT PROMOTE THE AIMS OF § 1782. ........................... 17

CONCLUSION ............................................................................................................ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Application of Esses*,
101 F.3d 873 (2d Cir. 1996)................................................................13

*In re Application of Ooo Promnefstroy*,
Misc. No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009) ...............................14

*In re Auto-Guadeloupe Investissement S.A.*,
12-MC-221 (RPP), 2012 U.S. Dist. LEXIS 147379 (S.D.N.Y. Oct. 10, 2012) ......................16

*Diversified Grp. Inc. v. Daugerdas*,
217 F.R.D. 152 (S.D.N.Y. 2003) .........................................................12

*Euromepa, S.A. v. R. Esmerian*,
51 F. 3d 1095 (2d Cir. 1995)................................................................16

*Gloria D. Dickerson v. USAir, Inc.*,
96 Civ. 8560 (JFK), 2001 U.S. Dist. LEXIS 27 (S.D.N.Y. Jan. 4, 2001) ...........................16

*In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*,
No. 15-MC-127, 2015 WL 4040420 (S.D.N.Y. Jun. 29, 2015) ...............................................15

*Hardin v. Jackson*,
600 F. Supp. 2d 13 (D.D.C. 2009).........................................................11

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004).........................................................................13, 14

*J.M. Cleminshaw Co. v. Norwich*,
93 F.R.D. 338 (D. Conn. 1981).............................................................19

*Kiobel by Samkalden v. Cravath, Swaine & Moore, LLP*,
895 F.3d 238 (2d Cir. 2018)................................................................14

*Mass. Bricklayers & Mason Funds v. Deutsche Alt-A Secs.*,
273 F.R.D. 363 (E.D.N.Y. 2011) ..........................................................12

*N. River Ins. Co. v. Phil. Reinsurance Corp.*,
63 F.3d 160 (2d Cir. 1995)..................................................................16

*Sackman v. Liggett Grp., Inc.*,
167 F.R.D. 6 (E.D.N.Y. 1996) .....................................................10, 11, 12

*In re Sarrio, S.A.*,
   119 F.3d 143 (2d Cir. 1997)................................................................................................11, 19

*Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*,
   376 F.3d 79 (2d Cir. 2004)................................................................................................13, 18

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*,
   922 F.2d 92 (2d Cir. 1990)......................................................................................................11

**Statutes**

28 U.S.C. § 1782 .......................................................................................................... *passim*

28 U.S.C. § 1610(c) ..........................................................................................................7

RICO ................................................................................................................................2, 3, 8

**Other Authorities**

Fed. R. Civ. P. 24(a) ...........................................................................................................10

Fed. R. Civ. P. 24(a)(2) ......................................................................................................12

Fed. R. Civ. P. 24(b)(1) ......................................................................................................12

Fed. R. Civ. P. 26 ...............................................................................................................16

Fed. R. Civ. P. 26(b)(2)(C)(i) ............................................................................................17

Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. (collectively, the "Stati Parties"), by and through their undersigned counsel, hereby submit this memorandum of law (1) in support of their motion to intervene (the "Motion") herein; and (2) in opposition to the Republic of Kazakhstan's (the "ROK") application (the "Application") for an order authorizing it to take discovery from Jefferies & Co. ("Jefferies" or the "Respondent") pursuant to 28 U.S.C. § 1782 in aid of foreign legal proceedings in the courts of Belgium, Luxembourg, The Netherlands, and Italy (collectively, the "European Proceedings").[1] The Court should grant the Motion and deny the Application for all the reasons that follow.

## PRELIMINARY STATEMENT

The ROK's Application is part of an eleventh-hour gambit to undermine the Stati Parties' enforcement of an over US$500 million arbitral award (the "Award") rendered in their favor and against the ROK in 2013. Notwithstanding that (1) the Stati Parties obtained that Award in an arbitration (the "Arbitration") over five years ago, and (2) the United States District Court for the District of Columbia (the "D.C. Court") confirmed the Award and reduced it to a judgment (the "Judgment") on March 23, 2018 (*Stati et al. v. Republic of Kazakhstan*, 1:14-cv-01638-ABJ-DAR, D.D.C. (the "D.C. Proceedings"), ECF 70), the ROK has refused consistently to satisfy its obligations to the Stati Parties under the Judgment or Award.

Instead, the ROK has embarked on a worldwide campaign to besmirch and undermine the Award and avoid its lawful enforcement and satisfaction. One of the linchpins of that campaign is the ROK's allegation that the Stati Parties "procured the Award by fraud." In 2015, the ROK sought permission from this Court to seek discovery from the law firm Clyde & Co. pursuant to § 1782 in an effort to build its fraud claim. (*In re: Ex Parte Application of Republic of*

---

[1] These present proceedings are hereinafter referred to as the "§ 1782 Proceedings."

*Kazakhstan for an Order Directing Discovery from Clyde & Co. LLP Pursuant to 28 U.S.C. § 1782*, 15 Misc. 0081(KMW), S.D.N.Y.).   The ROK prevailed on that application, and subsequently presented the evidence it obtained to the Svea Court of Appeal ("Svea Court") in Stockholm, Sweden, which, as the primary jurisdiction court with respect to the (Stockholm-seated) Award, was then considering the ROK's application to vacate the Award.   The Svea Court heard the ROK's full fraud case, but found no basis to set aside the Award.   The ROK then sought review by the Supreme Court of Sweden, which also refused to disturb the Award.

The ROK also sought to air its fraud case in the D.C. Court.   While proceedings to confirm the Award before the D.C. Court were pending, the ROK sought to submit its evidence to that Court as a defense to recognition of the Award.   The D.C. Court, however, rejected that request, finding, like the Swedish Court, that the Award was unaffected by fraud.

Undeterred by these adverse rulings, and in a transparent attempt to circumvent the D.C. Court's decision, the ROK repackaged its rejected fraud defenses to enforcement into a civil action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and filed it in the D.C. Court – the same court that had just rejected its attempt to inject its fraud allegations into the D.C. enforcement action.   The ROK's RICO complaint is now subject to a pending motion to dismiss. (*Republic of Kazakhstan v. Anatolie Stati, et al.*, 1:17-cv-02067-ABJ, D.D.C.)

The ROK has now returned to this District to seek extraordinarily broad categories of documents from four parties, including the Respondent.[2]   The ROK seeks this discovery more than **three years** after it purportedly came into possession of documents that "unraveled" the fraud, (*see* D.C. Proceedings, ECF 35, at 6), and despite its awareness **since the time of the**

---

[2] The ROK is seeking § 1782 discovery from four entities, which include Linklaters LLP, Jefferies & Co., GLG LLC, and Renaissance Capital.

**Arbitration** of the "Laren Transaction"[3] that allegedly connects the Respondent to these proceedings.

The D.C. Court has conclusively rejected the ROK's attempt to air its fraud claim in the United States, and has confirmed the Award and entered judgment on it.  In view of those rulings, the ROK should not be permitted to continue to return to U.S. courts seeking discovery from third parties in a seemingly endless campaign to attack the Award on grounds that the D.C. Court rejected.  The Court should deny the ROK's Application.

## FACTUAL BACKGROUND

### I.   THE ROK'S CAMPAIGN OF INTIMIDATION AND HARASSMENT AGAINST THE STATI PARTIES

The Stati Parties were investors who became the operators of the Borankol and Tolkyn oil fields, as well as the Tabyl exploration block, in Kazakhstan. (D.C. Proceedings, ECF 1, ¶¶ 29-30) They made substantial investments in the oil fields and the exploration block through Kazpolmunay LLP ("KPM"), a closed stock company which owned the subsoil use rights to the Borankol oil field, and Tolkynneftegaz ("TNG"), a Kazakh company that owned the subsoil use rights to the Tolkyn oil field and the Tabyl exploration block. (*Id*., ¶¶ 31-32) The Stati Parties invested over US$1 billion developing the oil fields and exploring the Tabyl Block (*Id*., ¶ 32) As well, TNG commenced construction of a liquefied petroleum gas plant (the "LPG Plant") (*Id*.).

However, less than seven years after the Stati Parties first invested in the ROK, and just as their investments had begun to yield significant returns, the ROK embarked on a campaign of intimidation and harassment to force the Stati Parties to sell their investments, which included

---

[3] The ROK bases its § 1782 Applications on the "Laren Transaction," which according to the ROK is composed of (i) the issuance by Tristan Oil Ltd. of additional notes (the "New Notes") with a nominal value of approximately US$111 million to Laren Holdings Ltd. ("Laren"); and (ii) the "Laren Loan," a credit facility extended from seven lenders to Laren for the purchase of the New Notes. (Application, at 10-11)

(1) publicly accusing the Stati Parties of fraud and forgery which impaired their credit rating and clouded their title to TNG; (2) levying more than US$70 million in baseless back taxes against KPM and TNG; (3) arresting and prosecuting KPM's general manager for alleged "illegal entrepreneurial activity," and sentencing him to a four year prison term and a US$145 million fine; and (4) seizing KPM's and TNG's assets without adequate basis. (*Id.*, ¶ 33).

## II.     THE SCC ARBITRATION

As a result of the ROK's draconian actions against the Stati Parties and their investments, the Stati Parties commenced the Arbitration under the Energy Charter Treaty (the "ECT") and the Arbitration Rules of the Stockholm Chamber of Commerce (the "SCC") on July 26, 2010. (D.C. Proceedings, ECF 2-1, ¶ 6)

After rejecting the ROK's jurisdictional objections, the Tribunal issued the Award finding, *inter alia*, that the ROK's actions "constituted a string of measures of coordinated harassment" in breach of its obligation to treat investors fairly and equitably under the ECT. (D.C. Proceedings, ECF 2-2, ¶ 830, ECF 2-3, ¶ 1095) The Tribunal awarded the Stati Parties approximately US$500 million in damage. US$196 million of the Award's damages was attributable to the value of the LPG Plant, the valuation of which is central to the ROK's fraud claim. (D.C. Proceedings, ECF 2-4, ¶ 1885, § N) In the Award, the Tribunal rejected both parties' evidence concerning the valuation of the LPG Plant, holding instead that "the relatively best source for the valuation … are the contemporaneous bids that were made for the LPG Plant by third parties after [the Stati Parties'] efforts to sell the LPG Plant." (D.C. Proceedings, ECF 2-4, ¶ 1746) State-owned KazMunaiGas ("KMG") had submitted one such bid, which the Tribunal considered as the "relatively best source of information for the valuation of the LPG Plant among the various sources of information submitted by the Parties…" (*Id.*, ¶ 1747)

### III.     POST-AWARD PROCEEDINGS

#### A.     THE SWEDISH SET-ASIDE PROCEEDINGS

Despite the final and binding nature of the Tribunal's decision, the ROK did not honor the Award and to this date has adamantly refused to pay a single cent to the Stati Parties. (Declaration of Egishe Dzhazoyan dated January 18, 2019 (the "Dzhazoyan Decl."), ¶ 2) Instead, the ROK has embarked on a worldwide scorched-earth campaign to defeat enforcement of the Award and evade its obligations to the Stati Parties. That campaign began on March 19, 2014 in Sweden, the seat of the Arbitration, where the ROK instituted annulment proceedings to set-aside the Award. (*Id*.) The ROK's initial case for annulment did not include any allegations of fraud and indeed, the ROK alleged that it only began to "unravel" the allegedly fraudulent scheme in the summer of 2015, after it obtained documents from Clyde & Co. through U.S. discovery proceedings.  (*Id*., ¶ 3; *see* D.C. Proceedings, ECF 35, at 6) The ROK then amended its pleadings in the Swedish set-aside proceedings to allege that the Award was "procured by fraud" and was thus contrary to Swedish public policy. (Dzazhoyan Decl., ¶ 4)

On December 9, 2016, the Svea Court of Appeal (the "Svea Court") in Sweden resoundingly rejected all the ROK's claims, including its allegations of fraud, and refused to annul the Award. (D.C. Proceedings, ECF 45, at 1) Of note, the Svea Court found that even if the ROK's allegations that the Stati Parties submitted false evidence concerning the LPG Plant costs were accepted as true, that evidence did not directly affect the Tribunal's damage calculation because the Tribunal relied upon an indicative third party bid – the KMG ibid, as noted above – in determining the value of the LPG Plant. (D.C. Proceedings, ECF 45-2, at 41) Specifically, the Svea Court held that "[s]ince the [T]ribunal based its decision on the indicative bid, the evidence invoked by [the Stati Parties] in the form of oral testimony, witness statements and expert reports regarding the amount of the investment [in the LPG Plant] – evidence which [the ROK] claimed

was false – has not been of direct significance to the outcome." (*Id.*,  at 42) On whether the indicative bid itself amounted to false evidence, the Svea Court concluded that because the bid was made prior to the Arbitration, "[t]he indicative offer *per se* is thus not to be regarded as false evidence even if potentially incorrect details of the amount invested in the LPG Plant … have been *among the factors* that KMG took into account when calculating the size of the bid." (*Id.*) (emphasis added)

The ROK filed a motion for extraordinary review before the Swedish Supreme Court to quash the Svea Court's judgment, but Sweden's highest court denied that motion on October 24, 2017, ending the ROK's efforts to overturn the Award in Sweden, the sole jurisdiction with plenary authority over the Award. (D.C. Proceedings, ECF 64)

### B.      THE U.S. ENFORCEMENT PROCEEDINGS

The Stati Parties commenced enforcement proceedings in the D.C. Court on September 30, 2014 (D.C. Proceedings, ECF 1); and the ROK filed its opposition on February 26, 2015 (D.C. Proceedings, ECF 20) (Declaration of Enrique Molina dated January 18, 2019 (the "Molina Decl."), ¶ 3) Much like its initial case before the Svea Court, the ROK did not initially oppose enforcement before the D.C. Court based on any theory of fraud. (*Id.*, ¶ 4)

Instead, more than a year after filing its opposition and several months after it purportedly began to "unravel" the Stati Parties' allegedly fraudulent scheme in the summer of 2015, the ROK filed a motion for leave to file "additional grounds" on April 5, 2016 in support of its opposition to enforcement. (*Id.*; D.C. Proceedings, ECF 32) In its motion, the ROK alleged that it had "[come] into possession of new evidence" that "the [US]$199 million awarded to the Statis for the LPG Plant in the [Arbitration] was a direct result of [a] fraud" perpetrated by the Stati Parties, and that the alleged fraud "renders the entire award unenforceable…" (Molina

Decl., ¶ 4; D.C. Proceedings, ECF 32, at 6)   The ROK, however, noted that "[t]o date, Kazakhstan has not completely unraveled the totality of [the Stati Parties'] fraud," (Molina Decl., ¶ 4; D.C. Proceedings, ECF 32, at 6) and acknowledged the possibility that its injection of its fraud allegations could require the parties to engage in discovery. (Molina Decl., ¶ 4; D.C. Proceedings, ECF 35, at 4-5).

The D.C. Court denied the ROK's motion on May 11, 2016, concluding that it was not "in the interest of justice to conduct a mini-trial on the issue of fraud here when the arbitrators themselves expressly disavowed any reliance on the allegedly fraudulent material" and noted that "the issue ha[d] already been presented to the Swedish authorities." (Molina Decl., ¶ 5; D.C. Proceedings, ECF 36, at 3-4)   The D.C. Court further noted that the Tribunal expressly disregarded the "allegedly fraudulent" evidence in reaching its decision on the quantification of damages. (Molina Decl., ¶ 5; D.C. Proceedings, ECF 36, at 3)

The ROK filed a motion for reconsideration on May 18, 2016. (Molina Decl., ¶ 6; D.C. Proceedings, ECF 37) After the Swedish proceedings came to an end on October 24, 2017, the D.C. Court denied the ROK's motion for reconsideration and rendered the Judgment confirming the Award on March 23, 2018. (Molina Decl., ¶ 6; D.C. Proceedings, ECF 70). The ROK has appealed the Judgment. The appeal was argued on November 28, 2018 and is ripe for adjudication. (Molina Decl., ¶ 6)

On November 13, 2018, the D.C. Court issued a finding that a reasonable period of time had passed, within the meaning of Section 1610(c) of the Foreign Sovereign Immunities Act, to begin execution of the Judgment.   (Molina Decl., ¶ 7; D.C. Proceedings, ECF 91) Given the ROK's ongoing refusal to either secure or satisfy the Judgment, the Stati Parties have commenced post-judgment discovery proceedings to determine the value and location of the

ROK's assets. The ROK has not provided any discovery to date, necessitating motion practice before the D.C. Court. (Molina Decl., ¶ 7; D.C. Proceedings, ECF 97)

In parallel to the enforcement proceedings in the D.C. Court, on October 5, 2017, the ROK filed a new action before the D.C. Court, reframing its fraud defense as a civil complaint alleging civil violations of the RICO statute. The Stati Parties have moved to dismiss that RICO action, and that motion remains pending.  (Molina Decl., ¶ 8)

### C.   THE ENGLISH ENFORCEMENT PROCEEDINGS

In light of the ROK's refusal to honor the Award, the Stati Parties were compelled to seek enforcement in multiple jurisdictions, including England.  (Dzhazoyan Decl., ¶ 5)  There, as elsewhere, the ROK also challenged the enforcement of the Award on grounds that the Stati Parties had engaged in a fraudulent scheme to improperly and artificially inflate the value of the LPG Plant.  (*Id.*)

The ROK sought discovery in connection with the English proceedings. (*Id.*, ¶ 7) On February 23, 2018, the Stati Parties provided approximately 3,300 hard copy documents to the ROK on a voluntary and informal basis. (*Id.*, ¶ 8)

On May 14, 2018, the ROK asked the English High Court of Justice (the "English High Court") for "permission to use the documents to be disclosed by the [Stati Parties] in these proceedings . . . for the purposes of certain related foreign proceedings."  (*Id.*, ¶ 9)  Shortly thereafter, on May 21, 2018, the English High Court granted the ROK permission to use the documents disclosed by the Stati Parties in connection with pending proceedings in the Netherlands, Belgium, Luxembourg, Italy, Washington, D.C. (including the RICO action), New York, and any other proceeding commenced by the Stati Parties in any jurisdiction seeking enforcement of the Award, the Swedish decision, or any other order or judgment on or in relation

to the Award.  (*Id*., ¶ 10)  The English High Court further instructed the Stati Parties to provide further discovery in accordance with English law by June 11, 2018. (*Id*., ¶ 11)

Anatolie Stati and Gabriel Stati accordingly issued Disclosure Statements on June 11, 2018.  (*Id*., ¶ 12)  The Stati Parties undertook a very robust discovery process to satisfy their obligations using search parameters insisted upon by the ROK and agreed to by the Stati Parties. (*Id*., ¶¶ 15, 17) The Stati Parties collected approximately 173,000 documents from ten (10) custodians, spanning a date range from September 14, 2005 to August 27, 2015, and using fifty-five search terms.  (*Id*., ¶¶ 20-22)  The search terms proposed by the ROK clearly indicate that it was targeting information to buttress its fraud allegations against the Stati Parties. Those search parameters included terms that go to the heart of the ROK's fraud case, such as "LPG Plant," "Perkwood," "LPG," "liquefied petroleum gas," and "Information Memorandum." (*Id*., ¶ 21) Moreover, the document custodians included Anatolie and Gabriel Stati themselves, the two individuals that the ROK alleges are at the heart of the Stati Parties' allegedly fraudulent scheme. (*See id*.)

As a result of this extensive collection and review process, the Stati Parties produced almost 71,000 electronic documents to the ROK. This was in addition to approximately 3,300 hard copy documents already provided to the ROK by the Stati Parties. (*Id*., ¶ 22)  The trove of electronic documents produced to the ROK contains at least 13,000 hits on search terms relevant to the discovery sought through the four § 1782 applications filed by the ROK in this District, including: (i) "Renaissance"; (ii) "Renaissance Capital"; (iii) "rencap"; (iv) "Renaissance Securities"; (v) "Laren"; (vi) "GLG"; (vii) "Jefferies"; (viii) "Linklaters"; (ix) "Sputnik Group"; (x) "GLG Atlas Macro Fund"; (xi) "Vision Advisors"; (xii) "Avelade"; and (xiii) "GLG Atlas Value & Recovery Fund." (*Id*., ¶ 29) The ROK has not challenged the adequacy of the Stati

Parties' disclosures in the English enforcement proceedings. (*Id.*, ¶ 25)

The Stati Parties chose to unilaterally discontinue the English enforcement proceedings. While the English High Court initially refused to allow the Stati Parties to discontinue the action, the Court of Appeal vacated that decision and the proceedings were terminated. (*Id.*, ¶ 27) However, the ROK still has all of the documents it obtained through those proceedings, and has permission from the English High Court to use them in all pending and future enforcement proceedings related to the Award.

## ARGUMENT

## I.   THE COURT SHOULD PERMIT THE STATI PARTIES TO INTERVENE

### A.   THE STATI PARTIES MAY INTERVENE AS OF RIGHT

A party may intervene under Federal Rule of Civil Procedure 24(a) upon satisfaction of four requirements: "(1) a timely application, (2) asserting an interest relating to the property or transaction which is the subject of the action, (3) where the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, and (4) the applicant's interest is not adequately represented by the existing parties." *Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6, 20 (E.D.N.Y. 1996) (citing *U.S. v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994)).

The Stati Parties meet all four requirements. *First*, this motion is timely. The Court determines the timeliness of a motion by considering all of the circumstances of the case, particularly "how long the applicant had notice of the interest before it made the motion to intervene; the prejudice resulting from any delay; the prejudice to the applicant if the motion is denied; and any other unusual circumstances." *Sackman*, 167 F.R.D. at 20. Here, the Stati Parties moved to intervene shortly after the ROK filed the Application. Further, the ROK will

not suffer prejudice if the Court hears the Stati Parties' objections. Of note, the Court has, in one of the ROK's four § 1782 applications, ordered the ROK to also serve a copy of the papers on the Stati Parties. (18-MC-541-JGK, ECF 3)

*Second*, the Stati Parties have an interest in the documents sought by the ROK.  A permissible interest for intervention must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990).  Here, although the Applications do not seek to obtain discovery *from* the Stati Parties, the documents sought by the ROK are intended for use *against* the Stati Parties in the European Proceedings. The Stati Parties thus have standing to challenge the ROK's Application.  *See, e.g., In re Sarrio, S.A.*, 119 F.3d 143, 148 (2d Cir. 1997) (holding that "parties against whom the requested information will be used may have standing to challenge the lawfulness of discovery orders directed to third parties).

*Third*, disposition of the Application may practically impair or impede the Stati Parties' ability to protect their interests. The ROK seeks documents here precisely to defeat enforcement of the Award. *Finally*, the Stati Parties' interests in this matter are not adequately represented and protected by the Respondent. To satisfy this prong, the Stati Parties must only make a minimal showing that "representation of [its] interest 'may be' inadequate." *Hardin v. Jackson*, 600 F. Supp. 2d 13, 16 (D.D.C. 2009) (emphasis added) (citations omitted); *Sackman*, 167 F.R.D. at 22 (citations omitted).  The Stati Parties have no current affiliation with, or relation to, the Respondent, which had no involvement in the Arbitration, the European Proceedings, or the enforcement proceedings in the United States and elsewhere.  The Stati Parties therefore must assert their own objections.

### B.    IN THE ALTERNATIVE, THE STATI PARTIES SHOULD BE GRANTED PERMISSIVE INTERVENTION

Alternatively, the Court should exercise its broad discretion and grant the Stati Parties permissive intervention under F.R.C.P. 24(b)(1), which permits intervention "on timely motion" by anyone who "has a claim or defense that share with the main action a common question of law or fact." *Diversified Grp. Inc. v. Daugerdas*, 217 F.R.D. 152, 157 (S.D.N.Y. 2003); *see also Sackman*, 167 F.R.D. at 22-3 (citations omitted) (commonality requirement "not to be read in a technical sense, but only require[s] some interest on the part of the applicant"). The primary factor is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." *Sackman*, 167 F.R.D. at 23. "Other relevant factors include the nature and extent of the intervenor's interest, whether their interests are adequately represented and whether the applicants for intervention will contribute to a full development of the issues presented for adjudication." *Id*. "The test is flexible and courts generally look at all of the factors rather than focusing narrowly on any one of the criteria." *Mass. Bricklayers & Mason Funds v. Deutsche Alt-A Secs*., 273 F.R.D. 363, 365 (E.D.N.Y. 2011).

Here, intervention will not unduly delay or prejudice the rights of the current parties. As discussed above, the Stati Parties seek to intervene to assert their own rights, which the Respondent cannot adequately protect. In addition, the Stati Parties' submissions will assist the Court by providing a fuller picture of the underlying Arbitration, the domestic enforcement proceedings, the European Proceedings, and other related proceedings.

In summary, the Court should permit the Stati Parties to intervene in this case under either F.R.C.P. 24(a)(2) or 24(b)(1) for purposes of opposing the Application.

## II.    LEGAL STANDARD FOR § 1782 DISCOVERY

Courts must undertake a two-part inquiry when determining whether to allow discovery under § 1782.  *First*, a court must decide whether the discovery sought satisfies the statutory requirements of § 1782.  The Second Circuit has held that § 1782 imposes three statutory requirements: "(1) that the person from whom discovery is sought reside (or be found) in the district of the district court to which the application is made, (2) that the discovery be for use in a proceeding before a foreign tribunal, and (3) that the application be made by a foreign or international tribunal or 'any interested person.'" *In re Application of Esses*, 101 F.3d 873, 875 (2d Cir. 1996) (citations omitted).

*Second*, because § 1782 authorizes, but does not require, courts to allow discovery, a court must also decide whether to exercise that discretion.  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244-45 (2004), the Supreme Court established the factors that cabin that discretion.  Specifically, a court must consider (1) whether the discovery sought is within the foreign tribunal's jurisdictional reach, and therefore accessible without seeking the aid of § 1782; (2) the nature of the foreign litigation, the character of the proceedings already underway, and the foreign country's receptivity to court assistance from the U.S.; (3) whether the § 1782 request conceals "an attempt to circumvent foreign proof-gathering limits" or other policies of the foreign country; and (4) whether the subpoena includes unduly intrusive or overly burdensome requests.  Where the factors weigh against granting a § 1782 application, it should be denied. *See, e.g.*, *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 81 (2d Cir. 2004).

III.     **THE COURT SHOULD DENY THE ROK'S APPLICATION**

A.     THE § 1782 APPLICATION DOES NOT SATISFY THE DISCRETIONARY FACTORS SET FORTH IN *INTEL*

1.     **The Documents or Testimony Sought are Accessible Absent the Assistance of § 1782**

The ROK has already obtained troves of documents from the Stati Parties through the English proceedings concerning the topics set forth in the proposed subpoena. Moreover, the ROK does not even attempt to explain why the Respondent would be in possession of any documents that cannot be (or, have not, in fact, already been) obtained from the Stati Parties. Indeed, a substantial number of the requests set forth in the subpoena on their face seek documents that would not be held exclusively by the Respondent.   (*See, e.g.,* § 1782 Proceedings, ECF No. 1-1, Request 1 (seeking "all communications with the Stati Parties"), Request 2 (seeking "all communications with any representatives or persons working on behalf of the Stati Parties …"), Request 7 (seeking "all financial statements of Stati-controlled entities…"), and Request 13 (seeking "all documents reflecting the Stati Parties' attempts to enforce the SCC Award, including the funding for the same")).

Because each of the Stati Parties are already parties to the European Proceedings, and are subject to the jurisdiction of the courts of Belgium, Italy, The Netherlands, and Luxembourg, the discovery the ROK has chosen to seek from this Court is obtainable through each of the European Proceedings should the tribunal in each of those proceedings deem such discovery to be appropriate.  *See Kiobel*, 895 F.3d at 246 (noting in a case involving U.S. counsel that "when the real party from whom documents are sought … [are] involved in [the] foreign proceedings, the first *Intel* factor counsels against granting a [§] 1782 petition"); *In re Application of Ooo Promnefstroy*, Misc. No. M-19-99-RJS, 2009 WL 3335608, *6 (S.D.N.Y. Oct. 15, 2009) (in weighing the first discretionary factor, courts must ask whether the appropriate conduits for

securing the documents are parties to the foreign proceedings).  This fact weighs against granting the discovery sought by the ROK through the Application.

> **2.    The Application Conceals an Attempt to Circumvent Foreign Proof-Gathering Restrictions and Policies of the United States**

The Application should also be rejected because it seeks discovery in aid of claims that a U.S. court has already refused to hear.  As such, the ROK's Application reveals a blatant attempt to invoke this Court's authority to build a case that the D.C. Court has already refused to let it bring in the U.S.  As other courts in this District have held, § 1782 should not be used "as an attempt to circumvent U.S. proof-gathering restrictions, just as much as those of a foreign country."  *In re Harbour Victoria Inv. Holdings Ltd. Section 1782 Petitions*, No. 15-MC-127, 2015 WL 4040420, *6 (S.D.N.Y. Jun. 29, 2015).  In *Harbour Victoria*, another case involving parallel enforcement proceedings in multiple jurisdictions including the United States, the court noted that:

> The ostensible foreign proceeding at issue in this case is a mirror image of an ongoing U.S. proceeding … to confirm and enforce the same arbitral award.  Under such circumstances, one can imagine that a discovery request in the U.S. proceeding will often be relevant to the foreign proceeding and vice versa. If the judge overseeing the U.S. proceeding denies a given discovery request, the losing party could simply turn around and file a § 1782 petition for the same information, but repackaged as aiding the foreign proceeding.

*Id*.  That is precisely what the ROK seeks to do here. The ROK presented all its fraud evidence to the D.C. Court, which refused to consider it and which gave the United States' imprimatur to the Award by confirming and entering the Judgment. The ROK is thus asking another U.S. court to aid its efforts in undermining and attacking the same Award that the D.C. Court found to be valid and enforceable, and which it has now permitted to be enforced.  The Application thus runs far afoul of bedrock U.S. public policy favoring the finality of judgments and obligating courts to

defend their jurisdiction (and, by extension, their rulings), *see cf. N. River Ins. Co.  v. Phil. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995) (highlighting that "while a court sometimes may review an earlier ruling, nevertheless, because there is a strong policy favoring finality the court exercises its underlying power to review earlier rulings sparingly.") (internal punctuation omitted); *Gloria D. Dickerson v. USAir, Inc.*, 96 Civ. 8560 (JFK), 2001 U.S. Dist. LEXIS 27 *10 (S.D.N.Y. Jan. 4, 2001) (noting the "strong public policy favoring finality"), by asking this Court to exercise its jurisdiction to enable the ROK to avoid the Judgment of a sister U.S. court.

### 3.     The Discovery Sought is Not Proper Under Fed. R. Civ. P. 26

#### a.     The ROK's Discovery Requests are Cumulative and Duplicative

A court may deny a party's § 1782 application if it considers the request to be "made in bad faith, for the purpose of harassment, or unreasonably seek[ing] cumulative or irrelevant materials… just as it can if discovery was sought in bad faith in domestic litigation." *See Euromepa, S.A. v. R. Esmerian*, 51 F. 3d 1095, 1101 n. 6 (2d Cir. 1995) (a district court may deny in whole an application under § 1782 if it is "made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials … just as it can … in domestic litigation.").

Consistent with the findings of the *Euromepa* court that a party's § 1782 application should be denied if the request unreasonably seeks "cumulative or irrelevant materials," *Euromepa*, 51 F.3d at 1101 n.6, courts in this Circuit and others have found that "[a] court considering a request for discovery under § 1782 must also be mindful of U.S. federal discovery procedures under Rules 26 and 45 of the Federal Rules of Civil Procedure." *In re Auto-Guadeloupe Investissement S.A.*, 12-MC-221 (RPP), 2012 U.S. Dist. LEXIS 147379 *12 (S.D.N.Y. Oct. 10, 2012).

The discovery sought by the ROK comes on the heels of the Stati Parties' disclosure of tens of thousands of documents to the ROK in the English court proceedings.  Tellingly, the ROK neglected to inform the Court about the robust discovery already provided by the Stati Parties overseas. Instead, it peddles the false accusation that the Stati Parties seek to suppress discovery. (§ 1782 Proceedings, ROK Response Letter to Judge Koeltl dated December 6, 2018 ECF 6), even though that claim flies in the face of hard facts – the Stati Parties have already disclosed approximately 75,000 documents in the English proceedings to the ROK, through a discovery process and search parameters agreed to by the ROK itself.

In the English proceedings, the Stati Parties produced documents collected from ten (10) custodians, spanning a ten-year date range, and responsive to fifty-five search terms. Indeed, a conservative search of the database of documents already provided for relevant terms identifies over 13,000 potentially relevant hits alone (Dzazhoyan Decl., ¶ 29)

What is more, because the English courts permitted the ROK to use all of the documents produced by the Stati Parties in current and pending enforcement proceedings, the ROK has at its disposal approximately 75,000 responsive documents, and the discretion to use all of them in the European Proceedings.  More importantly, the ROK itself has confirmed the potential relevance of that trove of documents already in its possession by relying on and citing those documents in its numerous submissions in the various European enforcement proceedings. (*Id.*, ¶ 26) Considering the breadth of discovery given in the English proceedings, and its substantive overlap with the discovery the ROK seeks in this proceeding, the discovery that the ROK seeks here is duplicative.  As such, it should be denied.  *See* Fed. R. Civ. P. 26(b)(2)(C)(i).

### B.   DISCOVERY WILL NOT PROMOTE THE AIMS OF § 1782.

In deciding whether to permit discovery under § 1782, courts must "exercise their

discretion … in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004). Here, granting the Application will not provide an efficient means of assistance to the ROK or the Stati Parties. To the contrary, it will encourage the ROK's campaign of delay and evasion.

By the ROK's own admission, it began to "unravel" the Stati Parties' allegedly fraudulent scheme in the summer of 2015.  Despite this, the ROK waited for over three years, and approximately a year after commencement of each of the European Proceedings before seeking documents from the Respondent, including documents regarding the "Laren Transaction." Short of alluding vaguely to impropriety, the ROK has not explained any connection between the Laren Transaction and its allegations of fraud in each of the European Proceedings.

Even assuming that the Laren Transaction has any relevance to its fraud case, however, the ROK must have been aware of this transaction since the time of the Arbitration. The arbitral record is replete with references to search terms potentially relevant to the Application, including over 200 references to "Laren" and over 360  references to "Renaissance" or "Renaissance Capital." (Dzazhoyan Decl., ¶ 30) Moreover, the Stati Parties produced to the ROK on May 7, 2012 – over *six years* ago – the Indenture dated December 20, 2006, the primary document on which the ROK bases its Application. (*Id.*, ¶ 31)  It is therefore impossible to understand why the ROK waited until now to seek additional documents.  The only reasonable inference, the Stati Parties respectfully submit, is that the Application (and the other three brought simultaneously with it) are intended to interrupt or impugn the Stati Parties' attempts to execute the judgment. While § 1782 does not explicitly raise notions of equity, it is well-settled that discovery should

be carried out efficiently and promptly, and that eleventh-hour "Hail Mary" discovery requests are improper. *See, e.g.*, *J.M. Cleminshaw Co. v. Norwich*, 93 F.R.D. 338, 360 (D. Conn. 1981) (highlighting the "now-settled view that litigants, the public, and the courts share an interest in the prompt and efficient administration of justice [and] that failures of counsel to comply with applicable discovery rules and court orders threaten that common interest . . .").

## <u>CONCLUSION</u>

For all of the reasons above, the Stati Parties respectfully request that this Court grant their Motion and to deny the Application in its entirety.


Dated: New York, New York
         January 18, 2019

                                        Respectfully submitted,


                                        /s/ James E. Berger
                                        James E. Berger

                                        Charlene C. Sun
                                        William B. Panlilio
                                        Enrique J. Molina

                                        KING & SPALDING LLP
                                        1185 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 556-2200
                                        (212) 556-2222 (fax)
                                        jberger@kslaw.com

                                        *Attorneys for Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd.*