

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 5/21/19
```

# MEMORANDUM ENDORSED

Hon. Gregory H. Woods
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

Herbert Smith Freehills New York LLP
450 Lexington Avenue, 14th floor
New York, NY 10017
USA
T  +1 917 542 7600
F  +1 917 542 7601
D  +1 917 542 7810
E  Scott.Balber@hsf.com
www.herbertsmithfreehills.com

Our ref
31023495
Your ref

Date
May 17 2019

Via ECF

**Re: Case No. 1:18-mc-00541-GHW In Re Application of Republic of Kazakhstan**

Dear Judge Woods:

    We write on behalf of Jefferies LLC ("Jefferies") in the above-referenced matter pursuant to Federal Rule of Civil Procedure 26(c) and Your Honor's decision in this matter on February 22, 2019 (the "February 22 Decision"), in order to request a telephonic conference concerning the scope of discovery requested by Petitioner in this action, the Republic of Kazakhstan (the "ROK"), and the issue of cost-shifting.  The February 22 Decision stated, *inter alia*:

> I agree with Jefferies that certain of the requests posed to it could be narrowed by, for example, limiting the requests by time span and search terms.  But rather than denying the requests entirely on that basis, I will grant the requests with the expectation that the respondent and petitioner will work together to negotiate reasonable limitations on any requests as the petitioner has committed to do.  To the extent that the parties are unable to do so, I will be available to work with the parties in order to resolve those disputes.[1]

(February 22, 2019 Hearing Transcript, p. 13.)

    Following Your Honor's ruling, Jefferies has produced tens of thousands of documents relating to events which occurred a decade or longer ago, and has sought in good faith to reach agreement with the ROK concerning reasonable limitations on the scope of the document subpoena issued in this matter (the "Subpoena") pursuant to the ROK's Petition under 28 U.S.C. § 1782 (the "Petition").

---

[1] Jefferies respectfully interprets this statement as authorizing the parties to contact Your Honor by letter in the event of a discovery dispute.   We will of course submit a joint pre-motion letter pursuant to Rule 2(c)(ii) of Your Honor's Individual Practices if we have misinterpreted the Court's intentions.

Herbert Smith Freehills New York LLP and Herbert Smith Freehills, an Australian Partnership, are separate member firms of the international legal practice known as Herbert Smith Freehills.

Herbert Smith Freehills New York LLP is a limited liability partnership registered in England and Wales with registered number OC375072. Its registered office is at Exchange House, Primrose Street, London EC2A 2EG.



Date
May 17 2019
Letter to
Hon. Gregory H. Woods

However, to date, the ROK has insisted on an extremely broad and indiscriminate set of search terms and custodians, and has refused Jefferies' reasonable proposals for cost-shifting in connection with these requests.  Jefferies is willing to produce all of the documents requested by the ROK, but given the ROK's insistence on an extremely broad scope of discovery with respect to events that occurred 13 years ago, as well as Jefferies' status as a non-party to any dispute with the ROK, and the ROK's manifest ability to pay the costs of discovery, Jefferies submits that such production should be at the ROK's expense.

In an effort to avoid motion practice, Jefferies therefore asks that the Court schedule a brief telephonic conference in order to provide guidance to the parties concerning these issues.

### Jefferies Has Engaged in a Good Faith Meet and Confer Process and Produced All Documents from the Tristan Oil Deal Files

Following the Court's February 22 Decision, Jefferies has attempted in good faith to engage with the ROK to understand and comply with the Subpoena.  Throughout this process, ROK has never made clear what category of documents it seeks in its document requests to Jefferies, except to refer repeatedly to the broad language of the Petition, notwithstanding that in the February 22 Decision, Your Honor suggested that the scope should be narrowed in a reasonable manner pursuant to discussions between the parties.

Nonetheless, Jefferies has consistently attempted to comply with the requests, and engaged ROK in an ongoing meet and confer process concerning the scope of the requests.

Jefferies served its responses and objections to the Subpoena on March 4, objecting on various grounds, including overbreadth and burden.  Jefferies nevertheless agreed to produce documents from its deal file responsive to all 14 of the requests made by ROK.  The parties held a meet and confer call on March 11, during which counsel for Jefferies requested some clarification or a description as to what category of documents ROK was seeking, and what issues it was litigating which necessitated discovery from Jefferies.  Counsel for ROK refused to provide further information in this regard and instead merely pointed to their Subpoena and their Petition.

On March 11, counsel for ROK wrote to counsel for Jefferies with their description of that day's meet and confer call, and demanded that Jefferies produce all documents from the relevant deal files within a one-week deadline.  (Ex. A.)

Counsel for Jefferies replied on March 15 (Ex. A), pointing out that it was not sufficient for ROK to say merely that they were seeking "documents related to the transactions", and noting that the transactions at issue occurred some 13 years ago, substantially increasing the burden of collection and production.  Jefferies nonetheless agreed to produce the non-privileged, responsive documents contained in the Jefferies deal files for the December 2006 and June 2007 notes offerings for Tristan Oil, Ltd. ("Tristan Oil").  Jefferies viewed this as entirely sufficient to satisfy the requests in the Subpoena.

Jefferies also stated that it no longer had any relevant emails dated prior to 2006 in its possession, custody, or control.  Jefferies nonetheless stated that it was willing to consider collecting more documents for the years 2006 and 2007 if the parties could agree on a reasonably tailored universe of custodians and search terms, and suggested that the parties further meet and confer after ROK had reviewed the deal file documents.



Date
May 17 2019
Letter to
Hon. Gregory H. Woods

On March 19, ROK replied, claiming Jefferies had mischaracterized the discussions but still not providing any further explanation of what documents it was seeking.  (Ex. A.)

Three days later, on March 22, Jefferies produced the Tristan Oil deal files for 2006 and 2007, consisting of all of the core documents for those deals – approximately 32,000 pages of material.

The parties held another meet and confer call on April 2, in which counsel for ROK repeated their requests for Jefferies to collect, search, review, and produce email correspondence, though not articulating why anything beyond the Tristan Oil deal files was relevant or necessary, again merely pointing to their Subpoena as justifying itself.

On April 3, counsel for the ROK emailed Jefferies to memorialize the parties' discussion, suggesting that Jefferies was engaging in delay tactics, though it had been demonstrably prompt and accommodating.  (Ex. B.)  Counsel for the ROK concluded their email by asking Jefferies to search for and review all emails containing the terms "Wells Fargo," "arbitral award," "Lauren," and "Kazakhstan," among many others – from more than a dozen proposed custodians, none of whom still work for Jefferies and despite the fact that the events in question occurred more than a decade ago.

Over the course of April, Jefferies attempted to negotiate with counsel for ROK over the list of custodians and search terms, while it collected archived email data from 2006-2009 and tested various search and review parameters.

On April 24, Jefferies wrote to ROK to inform them that Jefferies had analyzed its email data and found that the terms "Tristan" and "Ascom" were overbroad when searched without any qualifiers or limiting connecting terms.  Jefferies thus offered to review the results of all of the remaining terms from ROK's very substantial list of search terms – which it expected would include any relevant hits on Tristan and Ascom in any event – and produce the responsive, non-privileged documents that it finds from that review.  With that proposal, Jefferies also stated that it is willing to review documents from the final list of custodians requested by ROK and in the full time period requested of 2006-2009 – a set containing more than 43,000 documents.  (Ex. B.)

Counsel for ROK replied the following day refusing to agree to these terms.  (Ex. B.)  On April 29, Jefferies responded that the search terms "Tristan" and "Ascom" were together yielding a de-duplicated review set of well over 50,000 documents, which would impose excessive burden and expense on Jefferies as a third party subpoena respondent.  (Ex. B.)

Following further unproductive dialogue regarding the minimization of "false hits", counsel for ROK replied on May 7 to demand that Jefferies produce its additional documents within one week, and requesting more information regarding Jefferies' efforts to reduce false positives.  (Ex. B.)  Jefferies responded the same day as follows:

> To recap, we have already produced the deal files for Tristan and Ascom.  As we have said, in our view this was sufficient and constituted full and complete compliance with your subpoena.  Nonetheless we have continued to field your inquiries in good faith and discuss potential additional productions.  As for your suggested timeline, if we do produce any additional documents, we would do so only after there is an agreed finite review universe.  In the meantime, we reiterate our request that The Republic of Kazakhstan agree to bear all of Jefferies' fees and costs associated with this review and production, as the burden and expense of the total scope of review as currently contemplated would be excessive for a third party to bear in this context.



Date
May 17 2019
Letter to
Hon. Gregory H. Woods

(Ex. B.)

Counsel for ROK replied on May 9, demanding that document production begin within four days and arguing that ROK should not be required to bear any of the costs of Jefferies' compliance with its Subpoena. (Ex. B.) The ROK suggested, absurdly, that Jefferies should produce the documents without reviewing them in any manner for privilege, and stated that cost-shifting was inappropriate simply because Jefferies had retained outside counsel to deal with the Subpoena. It was at this point that the parties unfortunately reached an impasse and now require the Court's assistance as offered in the Court's February 22 Decision in this matter. For these reasons, Jefferies thus respectfully requests that the Court schedule a telephonic conference in order to facilitate a resolution of these issues, or in the alternative, authorize the submission of a letter motion seeking an appropriate protective order.

### The ROK Should Bear the Costs of Further Document Production by Jefferies

Courts in the Southern District of New York have required petitioners to pay 100% of costs related to § 1782 discovery where such discovery caused a substantial burden on respondents, especially where the events in question occurred many years ago and the relevant documents must be recovered from archival sources. *See, e.g., Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*, 785 F. Supp. 2d 434 (S.D.N.Y. 2011). To determine the proper allocation of costs, the Court should consider "whether the nonparty actually has an interest in the outcome of the case, whether the nonparty can more readily bear the costs than the requesting party and whether the litigation is of public importance." *In re Law Firms of McCourts & McGrigor Donald*, 2001 WL 345233, at *1 (S.D.N.Y. Apr. 9, 2001) (internal citations omitted) (applicant was responsible for the expense of document production where, *inter alia*, it had failed to establish that the non-party was better able to bear the cost). When considering whether the litigation is of public importance, courts have generally stressed "the high-profile nature of the case[ ] and the strong public interest in the outcome." *Id.*; *see also In re Exxon Valdez*, 142 F.R.D. 380, 384 (D.D.C.1992); *First American*, 184 F.R.D. at 242.

*First*, Jefferies has no interest in the outcome of this case. It has no stake in this litigation between ROK and the Stati Parties. The deals in question took place over a decade ago and involved many Jefferies personnel who are no longer with the company. Jefferies is precisely the "quintessential, innocent, disinterested bystander" the rule aims to protect. *In re First Am. Corp.*, 184 F.R.D. 234, 242 (S.D.N.Y. 1998). *Second*, Jefferies cannot more readily bear the costs of its compliance with this Subpoena than the ROK – a sovereign nation that is a major global oil producer, with a gross domestic product of approximately US$160 billion. Jefferies' costs of compliance have now risen to more than $50,000 since the February 22 Decision, and will substantially rise if Jefferies is ordered to review and produce any significant subset of the review set ROK is requesting, which currently yields approximately 80,000 documents. ROK is better placed to bear these costs than non-party Jefferies. And *third*, this litigation is of limited public importance. The case is of limited interest other than to the ROK and Stati Parties, and there are very few evident broader policy implications to this dispute. Even if the dispute were of high public interest, "that factor alone does not justify" requiring Jefferies to bear the costs associated with its compliance. *In re Law Firms*, at *3 (finding applicants must pay respondent's reasonable costs and expenses for production of documents in complying with applicant's 1972 discovery request because "[w]hile the criminal trial arising out of the Pan Am 103 disaster is undoubtedly of high public interest, that factor alone does not justify requiring victims of that attack to bear a portion of the costs of an apparently well-financed defense.").



Date
May 17 2019

Letter to
Hon. Gregory H. Woods

### The ROK's Arguments Against Cost-Shifting Are Contrary to Clear Precedent

Counsel for ROK has proposed that Jefferies produce the documents without reviewing them and agree to a stipulation that any waiver of the attorney-client privilege does not constitute a waiver. But counsel for ROK ignores the law: voluntary disclosure of work product outside of an attorney-client or common-interest relationship waives the privilege as to other parties. *In re Steinhardt Partners, L.P.*, 9 F.3d 230, 235 (2d Cir. 1993) ("Once a party allows an adversary to share the otherwise privileged thought processes of counsel, the need for the privilege disappears."); *see also In re Initial Pub. Offering Sec. Litig.*, 249 F.R.D. 457, 458 (S.D.N.Y.2008) (holding that, despite a confidentiality agreement, voluntary disclosure of attorney work product to a governmental investigative body waives privilege absent special circumstances). Jefferies cannot "pick and choose . . . waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others, or to invoke the privilege as to communications whose confidentiality [it] has already compromised for [its] own benefit." *In re Steinhardt Partners*, 9 F.3d at 235. It is, accordingly, perfectly reasonable for Jefferies to insist on a privilege review of the relevant materials.

ROK has also suggested that Jefferies cannot be entitled to recover the costs of review and production because it retained outside counsel. But this position is preposterous – indeed, it would render the cost-shifting provisions of Rule 45 inoperative whenever a party is represented by counsel, a limitation that is contained nowhere in the Rule. It is not necessary to be a *pro se* party in order to recover the costs of compliance with an onerous third-party subpoena. In support of this point, ROK has misconstrued the holding of *In re World Trade Ctr.*, 2010 WL 3582921, in which the court held that "[h]iring outside counsel is appropriate when a nonparty wishes to resist a *subpoena duces tecum* for its own independent reasons, but that is not a sufficient reason" – by itself – " to charge legal costs to the issuing party." *Id*. Nowhere in the opinion does it state that the presence of outside counsel somehow weighs in favour of a non-party bearing the costs of its compliance with a Subpoena.

In sum, Jefferies has done its best to accommodate the Court's order to comply with the Subpoena as reasonably construed or limited, but ROK has insisted on an unreasonable scope and burden while giving little indication of how the review could be focused. Jefferies thus respectfully requests that the Court schedule a telephonic conference in order to facilitate a resolution of these issues, or in the alternative, authorize the submission of a letter motion seeking an appropriate protective order.

Respectfully submitted,

/s/ *Scott S. Balber*

Scott S. Balber
Herbert Smith Freehills New York LLP

Application granted. The Court will hold a teleconference to discuss the issues raised in this letter on May 23, 2019 at 2:00 p.m. The parties are directed to call Chambers (212-805-0296) at that time with all parties on the line.

SO ORDERED.

Dated:  May 21, 2019
New York, New York

_____
GREGORY H. WOODS
United States District Judge